United States District Court
Southern District of New York
------------------------------------------

United States of America,

        -against-

                                      19 Cr. 912 (WHP)

Albert O. Grant, II,

        Defendant.
------------------------------------------

### ALBERT GRANT'S SENTENCING SUBMISSION

                                                    Federal Defenders of New York
                                                    Attorney for Albert Grant
                                                    52 Duane Street - 10th Floor
                                                    New York, New York 10007
                                                    Tel.: (212) 417-8792

                                                    Jonathan Marvinny

                                                    *Of Counsel*

To:    Audrey Strauss, Esq.
        Acting United States Attorney
        Southern District Of New York
        One St. Andrew's Plaza
        New York, New York 10007
        Attn: Jilan J. Kamal, Esq.
              Assistant United States Attorney

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

September 3, 2020

By ECF

Hon. William H. Pauley III
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, New York 10007

**Re:   United States v. Albert O. Grant, II, 19 Cr. 912 (WHP)**

Dear Judge Pauley:

    Albert Grant is scheduled for sentencing on September 17, 2020. He has pled guilty to and accepted full responsibility for multiple instances of criminal conduct related to his work as an attorney. First, he participated in advance fee schemes involving fraudulent offers to obtain standby letters of credit ("SBLCs") by agreeing to serve as an escrow agent, using his attorney escrow account to receive and distribute victim funds. Next, he misappropriated funds belonging to a client he had represented in a commercial real estate transaction. These are wrongs for which Mr. Grant offers no excuse.

    But certain facts cry out in mitigation and show that, notwithstanding his serious misconduct, Mr. Grant should not be imprisoned. These facts include:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;
- He has no criminal history whatsoever, and has already been seriously punished for his misconduct—he has been suspended from practicing law and is now a convicted felon;
- He played a relatively limited role in the offense, and others more culpable than him have received short sentences, including a coconspirator-leader who received a sentence of a year and a day;
- He is exceedingly unlikely to ever commit another offense given his age (74), lack of criminal history, and profound remorse; and
- His advanced age and various medical and mental health conditions mean that he would be particularly vulnerable to COVID-19 if incarcerated.

Honorable William H. Pauley III September 3, 2020
United States District Judge Page 2 of 8

Re: United States v. Albert O. Grant, II
 19 Cr. 912 (WHP)

For all of these reasons, and as will be discussed in more detail in this submission, we respectfully request that the Court impose a non-incarceratory sentence.[1]

**Mr. Grant's background**

Albert Grant is 74 years old. Born and raised in New Jersey, he had a childhood typical of upper-income American families in the 1950s. His father was a dentist and his mother worked at home until Mr. Grant entered high school, at which point she became a schoolteacher. It was a relatively happy home, though his father suffered from depression and would occasionally turn sullen. Fortunately, his family had the means to provide him a good education; he attended a pair of elite boarding schools in New Jersey, graduating from Blair Academy in 1964. He excelled academically, finished near the top of his class, and won an award for best student in European history.

Mr. Grant, whose wife would later describe him to the Probation Office as "bookish and scholarly," PSR ¶ 87, enjoyed school and always knew that higher education was in his future. He earned an undergraduate sociology degree from the University of Virginia in 1968, then immediately entered law school. He earned a JD from the University of Maryland in Baltimore in 1971, and a Certificate in Taxation from NYU's business school in 1976. Finally, he received a Master of Business Administration from George Washington University in 1983.

For Mr. Grant, who leaned more towards shirts and ties than long hair and bell-bottomed jeans, the 1960s and 1970s were no time of countercultural exploration. In between his forays into higher education he instead worked various jobs and served in the U.S. Army. His father had served in the Navy and Mr. Grant had always admired him for it; Mr. Grant also wanted to give back to his country. He was assigned to the Signal Corps at Fort Gordon in Georgia, where he studied map-reading and war strategy, and achieved the rank of first lieutenant in 1971. When his anticipated deployment to Vietnam did not come to pass, he instead moved on to spend multiple years in the U.S. Army Reserves, achieving the rank of captain. He exited the Army with an honorable discharge in 1975.

Following his military service and schooling, Mr. Grant embarked on a long career in the financial and legal fields. He worked as a financial planner, a trust officer, and, of course, an attorney. He began his legal career as an associate in various firms, but by 1990 had opened his

---

[1] We have no objections to the PSR.

| | |
|---|---|
| Honorable William H. Pauley III | September 3, 2020 |
| United States District Judge | Page 3 of 8 |

Re:   United States v. Albert O. Grant, II
      19 Cr. 912 (WHP)

own practice, while also remaining of counsel to a handful of small firms. The bulk of his practice since the early 1990s has been in estate planning and administration.

On the personal front, in 1995 he married Evelyn Donegan. It was a first marriage for both and remains strong to this day. Ms. Donegan is an attorney at a law firm in Piscataway, New Jersey. In 2018 the couple confronted a major challenge when ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ She told the Probation Office that Mr. Grant is a "devoted, caring, and good husband," ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The couple's struggles have only strengthened their bond, and she has stood by Mr. Grant throughout this case.

Mr. Grant is good-natured and kind, as letters submitted to the Court on his behalf show. A former client writes that Mr. Grant provided "excellent and competent legal services with an extreme attention to ethics and being honest in all his interactions," and calls him "an affable and educated man." Letter of Roger E. Bendelac (Ex. A). A friend writes: "[Mr. Grant] has always been helpful, lending or even giving me money when my wife was dying for 15 years. He has not hesitated to be there for me since 1990." Letter of Dr. Larry T. Gell (Ex. B).

**Offense conduct**

Notwithstanding Mr. Grant's best professional efforts, his law practice was never particularly remunerative. He estimates that he never earned more than approximately $50K in a year; after expenses, his business often operated at a loss. He has never owned a home, never had children, and remains in a precarious financial position today. He and Ms. Donegan reside in a rented home in Randolph, New Jersey—which the PSR describes as a "cluttered," "small, one-level, single-family residence," PSR ¶ 88—and subsist in large part on her salary[2] and his social security payments. Coincidentally, both also have disabled brothers whom they help care for financially when they are able. They have meager savings and are in significant debt.

It is against this financial backdrop that Mr. Grant committed the offense conduct in this case. As set forth in the PSR, Mr. Grant is responsible for participating in various advance fee schemes involving offers to businesses to obtain SBLCs that were never delivered. And on a

---

[2] The PSR notes that Mr. Grant reported that Ms. Donegan's monthly net salary is $1,767.53. PSR ¶ 126. This was an error; that figure represents her *weekly* net salary, meaning her monthly net salary is approximately $7,000.

Honorable William H. Pauley III  September 3, 2020
United States District Judge  Page 4 of 8

Re:  United States v. Albert O. Grant, II
     19 Cr. 912 (WHP)

separate occasion he misappropriated a client's funds during a real estate transaction and attempted to forestall the client's discovery of his misappropriation. He fully acknowledges this serious misconduct and accepts responsibility.

*Advance fee schemes.* As for the advance fee schemes, Mr. Grant's role was to serve as an escrow agent, using his attorney escrow account to receive and distribute victim funds. To be sure, his very status as an attorney with an escrow account lent the scheme a certain legitimacy. But Mr. Grant was little more than a cog. He was neither an architect nor a leader of the schemes, and instead acted at the express direction of those who were, including Joseph Perlman and a co-conspirator identified in the PSR as CC-1. Indeed, the PSR recounts numerous instances of Mr. Grant's submitting to Perlman's and CC-1's authority. *See, e.g.*, PSR ¶ 20 ("That same day [Feb. 25, 2019], at the direction of Perlman and a co-conspirator (CC-1), Grant wire transferred approximately $900,000 from Escrow Account-1 to a different bank . . . ."); PSR ¶ 32 ("On April 11, 2019, CC-1 emailed Grant, copying Perlman, which instructed Grant to send to CC-1 some of the funds that Business Victim-2 wire transferred into Escrow Account-1. Specifically, CC-1 wrote, 'Please release $900,000.00 of the funds held in escrow.'").

Further evidencing Mr. Grant's limited role is the Government's sentencing submission in the Perlman case, where it describes Perlman as both the architect of the scheme and as someone who had significant authority over Mr. Grant. "Perlman played a central role in the conspiracy, including by gaining his victims' trust through agreements he negotiated and signed on behalf of his business, Perl Global Enterprises, in a successful effort to persuade the victims to part with millions of dollars in advance fees [and] by directing [Grant] to lie [about the status of the victims' funds]." Gov't Sent'g Letr. 4, *United States v. Joseph Perlman*, 19 Cr. 531 (ALC) (Nov. 29, 2019), ECF No. 11. An example of the scheme's operations offered by the Government, involving an Arizona-based business (labeled "Business Victim-1" in Mr. Grant's PSR) that sought an SBLC, is illustrative. There, Mr. Grant refused to follow Perlman's direction to lie to the victim-business about the status of the escrow funds. *Id.* at 2 ("On April 11 to 12, 2019, Perlman himself directed [Grant] to tell a similar lie, but [Grant] refused to follow Perlman's instructions."). When Mr. Grant wouldn't play ball, Perlman himself then altered the account statements in order to deceive the victim-business. *Id.*; *see also* PSR ¶¶ 25–26 (recounting same incident). This incident speaks to the relatively lesser role Mr. Grant played in the conspiracy, to say nothing of his at least occasional ambivalence about engaging in wrongful conduct.

Honorable William H. Pauley III                                              September 3, 2020
United States District Judge                                                   Page 5 of 8

Re:   United States v. Albert O. Grant, II
      19 Cr. 912 (WHP)

     For his participation in the advance fee schemes Mr. Grant earned little. He estimates receiving about $2,500 to $5,000 for each transaction, even those where the schemes' leaders obtained millions of dollars. For that reason, while the total loss amount (and the anticipated restitution figure) is high, we expect Mr. Grant's personal forfeiture amount to be a mere fraction of that total.

     *Misappropriation of a client's funds.* Next, Mr. Grant failed to disburse approximately $315K to a client he had represented in a commercial real estate transaction in early 2018. While he had disbursed most of the money he owed the client (and all the money he owed to other transaction participants), he had nevertheless misappropriated some of the outstanding balance for other expenses. His plan was to recoup the money quickly and pay his client back before too much time had passed, but his plan did not work out. Mr. Grant deeply regrets this misconduct. He had known this particular client since law school and understood that he had betrayed his confidence in unforgivable fashion.

     Crucially, however, when the client brought suit against Mr. Grant in this District in May 2018 to collect the money Mr. Grant owed him, Mr. Grant promptly admitted his misconduct and settled the case. Less than a month after the suit commenced Mr. Grant filed a letter with the court reporting that he would not contest the allegations against him and that he would transmit his banking information to plaintiff's counsel to begin the process of making his former client whole. *See* Letter of Albert O. Grant II, *Goldart et al. v. Grant*, 18 Cv. 4709 (VEC) (June 8, 2018), ECF No. 11. Mr. Grant had therefore already admitted his culpability and taken steps to atone for it by the time of his arrest in February 2019.



Honorable William H. Pauley III  September 3, 2020
United States District Judge  Page 6 of 8

Re:  United States v. Albert O. Grant, II
     19 Cr. 912 (WHP)

**A non-incarceratory sentence is appropriate.**

The equities support a non-incarceratory sentence.

*First*, ████████████████████████████████████████████████████████████████

*Second*, Mr. Grant—who has no prior criminal history and who stands convicted of only non-violent offenses—has already been severely punished for his misconduct. Most significantly, he has lost his ability to practice law—he has been temporarily suspended from practice in both New York and New Jersey pending the outcome of various disciplinary proceedings. *See, e.g.*, N.J. Suspension Order (Ex. C). His attorney in the New Jersey proceedings writes, "I do not know what the future holds for Albert with regard to the practice of law. That path may be foreclosed for a significant period of time." Letter of Robert W. McAndrew, Esq. (Ex. D). And Mr. Grant is now, of course, a convicted felon. These are harsh punishments unto themselves and mean that he will not escape grave consequences for his behavior even absent imprisonment.

*Third*, in terms of proportional punishment, others more culpable than him have received short sentences. For example, Perlman—who played a much greater role in the advance fee scheme ████████████████████████████████████████████████████████—was sentenced to a year and a day's imprisonment. *See* PSR ¶ 7. Perlman has not yet begun to serve that sentence and has a pending motion to reduce his time to allow him to avoid prison altogether because of concerns related to the COVID-19 pandemic. *See* Mot. to Reduce Sentence, *United States v. Joseph Perlman*, 19 Cr. 531 (ALC) (May 26, 2020), ECF No. 27. He therefore may end up serving no prison time at all. Given this, imprisoning Mr. Grant would seem particularly unfair.

*Fourth*, Mr. Grant's personal characteristics, the circumstances of his case, and his sincere remorse suggest that he is exceedingly unlikely to commit additional crimes. To begin, according to Sentencing Commission data, "[o]lder offenders [are] substantially less likely than younger offenders to recidivate." U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders*, 3 (Dec. 2017), https://bit.ly/3jyQbWX. Indeed, rearrests for offenders over 65 years old (Mr. Grant is 74) are vanishingly rare:

Honorable William H. Pauley III                                    September 3, 2020
United States District Judge                                       Page 7 of 8

Re:   United States v. Albert O. Grant, II
      19 Cr. 912 (WHP)



     Data also shows that the fact that Mr. Grant is highly educated, has zero criminal history points, and has committed only non-violent offenses reduces his likelihood of reoffending still further. *See id.* (finding that high education levels, low criminal history categories, and non-violent offenses of conviction all substantially contribute to lower recidivism rates). Put simply, the odds of Mr. Grant reoffending are close to zero.

     This is especially so where Mr. Grant is sincerely remorseful, as evidenced by his decision to quickly plead guilty to his offenses, ███████████████████████, and settle his related civil matters. His attorney in the New Jersey disciplinary proceedings writes of the remorse he has observed in Mr. Grant: "I can tell you that Albert is clearly aware that he has made serious mistakes and that his actions were wrong … [H]e has learned from these episodes and is genuinely contrite." Letter of Robert W. McAndrew, Esq. (Ex. D).

     ***Fifth***, a non-incarceratory sentence is particularly appropriate given the threat that COVID-19 continues to pose in our nation's prisons. As courts in this District have observed, COVID-19 is much more easily transmitted, and is thus particularly dangerous, in the prison environment. *See, e.g.*, *United States v. Gross*, No. 15-cr-769, 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020); *Coronel v. Decker*, No. 20 Civ. 2472, 2020 WL 1487274, at *3 (S.D.N.Y. Mar. 27, 2020). These considerations require that we reduce or, at a minimum, not increase, our jail populations wherever it is reasonable to do so. *See generally United States v. Garcia*, No. 18-CR-802-04, 2020 WL 2468091, at *7 (S.D.N.Y. May 13, 2020) (agreeing that the "overall [prison] population needs to be significantly lowered to reduce the density in the jails to allow for adequate social distancing, minimize the strain on the jail's medical care system, and ensure adequate space is available for necessary quarantining") (internal quotation marks omitted).

| | |
|---|---|
| Honorable William H. Pauley III | September 3, 2020 |
| United States District Judge | Page 8 of 8 |

Re:   United States v. Albert O. Grant, II
      19 Cr. 912 (WHP)

      Because of his advanced age, Mr. Grant would be at increased risk of serious illness or even death should he contract COVID-19. The Center for Disease Control (CDC) reports that "[i]n general, your risk of getting severely ill from COVID-19 increases as you get older. In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older." CDC, *People at Increased Risk of Severe Illness: Older Adults*, available at https://bit.ly/2GaQaKm (last visited Sept. 3, 2020). Various physical ailments further increase Mr. Grant's risk. At 6'0" and 255 pounds, he has a body mass index (BMI) of 34.6, and thus plainly qualifies as obese, *see* BMI Calculator, https://bit.ly/32MfNJ9, a problematic underlying condition in the COVID-19 context. *See* CDC, *People at Increased Risk of Severe Illness: People with Certain Medical Conditions*, available at https://bit.ly/34TApC4 (last visited Sept. 3, 2020). He also has high blood pressure and cholesterol, which contributed to his suffering a stroke in 2014.

      Complicating this picture, Mr. Grant also suffers from 

—

      For the reasons discussed, the Court should impose a non-incarceratory sentence. Such a sentence would be "sufficient, but not greater than necessary, to comply with" all sentencing purposes. 18 U.S.C. § 3553(a).

Sincerely,

/s/ Jonathan Marvinny
Jonathan Marvinny
Assistant Federal Defender
212.417.8792

jonathan_marvinny@fd.org

# EXHIBIT A

ROGER E BENDELAC

New York, NY 10022

AUGUST 28, 2020

I am Roger Bendelac, I have met Mr. Albert Grant, many years ago, when he was associated with the late Paul Stein, a lawyer and CPA that represented me in many matters while I was a Senior Vice President of Shearson Lehman in New York, over three decades ago.  Subsequently, while I was the CEO of Laidlaw Global Securities, Inc., a broker-dealer that was owned by Laidlaw Global Corporation, a public company on the American Stock Exchange then I met again with Mr. Grant, who rendered legal services for that public entity then.

Mr. Grant was always known to all for extreme honesty, dedication and had work. Over the years, he provided excellent and competent legal services with an extreme attention to ethics and being honest in all his interactions.  He was an affable and educated man.

More recently, I used Mr. Grant's legal services in connection with him supervising certain business transaction and in the year 2008 he also acted as a Corporate Secretary for an entity that was listed on the Plus Market in London. Mr. Grant was always hard at work, dedicated and polite.  A real gentleman, At no point, while knowing him for the last 30 years, did Mr. Grant showed any inclination of any bad behavior of any kind.  He was extremely knowledgeable and had a wealth of knowledge and courtesy to the extreme.

Mr. Grant 's health through wide weight variations and various health conditions encountered  a lot of health issues that made him not as sharp as he used to be and his extreme kindness might have made him more gullible over the recent years, as he always assumed the best of others. That is why in my opinion, based on my knowledge of various cultural environment, having been born in the North of Africa, growing up in France and finally choosing to become an American citizen after I graduated from Columbia Graduate School of business, I was always impressed by the cultural knowledge of Mr. Grant and his ability to understand the relativity of cultural matters, but one thing always stroke me was his willingness to help many in various matters, and his extreme kindness, a trait that is not dependent upon one's cultural environment as decency is something that exists and that does not exist and crosses over all groups in life, whether national, or social. Mr. Grant as a dedicated and honest person with knowledge , culture and respectful of differences among people, was for me the quintessence of a human being that should not be in the present predicament had it been not for  an accident of some sort.

I hope that leniency will recognize this Gentleman's achievements as  a human being who knew that the measure of a man is not what he can do for people who have power over him but what he can do for people from which he can expect  nothing because they hold no power and Mr. Grant expressed that same respect for the most indigent that he expressed for the more powerful.

May in this unexplained darkness, someone find in his heart to understand that if someone falls and that someone falls as a result of circumstances where that person got diminished health wise may be it is time to be lenient on something that is so out of character that there must have been forces beyond his will, as his will was always and has always been in the direction of  good and kindness.

Respectfully submitted,
ROGER E BENDELAC,

# EXHIBIT B



**International Agency for Economic Development**
2193 SW Congress Blvd
Boynton Beach, FL 33426  USA
Tel/Cell: 1-212-687-1775  -  Fax: 1-561-877-8596
- Web: https://www.iaed.org

August 31, 2020

Honorable William H. Pauley III
United State District Judge
Southern District of New York

Dear Honorable William H. Pauley III,

Im am writing in support of Mr. Albert O Grant II.  I have known Mr Grant since 1990 when I joined the United Nations and formed IAED International Agency for Econmomic Development in New York State. He has been a unrepalceable assistant and continuous help to me personlly and to IAED.  He currently is on the Board of IAED.

 I have observed him working with his clients, and going out of his way to always be compassionate and helpful to them.  He has always been helpful, lending or even giving me money when my wife was dying for 15 years. He has never hesitated to be there for me since 1990.

Recently I felt he was sick because he will never complain or tell you his problems.  But, I noticed many emails and communications that were next to impossible to read.  I was guessing he might have Alztimers (similar to my wife's FTD Frontal Temporal Lobe Dementia).  Only now have I found out about his legal problems.  He has never sharred the details of his case with me.

I am sure if he did something wrong, he is extremely sorry for it, and has deep remorse for it.  I would hope the court can be forgiving because IAED, countries, millions of people need him.  IAED conducts Economic and Social Development projects in the LDC's Least Developed Countries around the world and I need him.

 I am proud to know him for the past thirty years.  I have known Albert O. Grant II to be of the strongest moral and highest character.

Reapectfully yours,

*Dr. Larry Gell*

Dr. Larry T. Gell
Director-General & Founder IAED

# EXHIBIT C

SUPREME COURT OF NEW JERSEY
D-125 September Term 2019
084354

In the Matter of

Albert O. Grant, II,

An Attorney At Law

(Attorney No. 268911971)

FILED
APR 29 2020
Heather J Baker
CLERK

O R D E R

**Albert O. Grant, II,** of **Randolph**, who was admitted to the bar of this State in 1971, having pleaded guilty in the United States District Court for the Southern District of New York to a three-count information of conspiracy to commit wire fraud (count one) in violation of 18 U.S.C. §1343 and §1349 and wire fraud (counts two and three) in violation of 18 U.S.C. §1343, and good cause appearing;

It is ORDERED that pursuant to Rule 1:20-13(b)(1), **Albert O. Grant, II,** is temporarily suspended from the practice of law pending the final resolution of ethics proceedings against him, effective immediately and until the further Order of this Court; and it is further

ORDERED **Albert O. Grant, II,** be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that **Albert O. Grant, II,** comply with Rule 1:20-20 dealing with suspended attorneys; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this state.

WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this 29th day of April, 2020.

*/s/ Heather J. Baker*

CLERK OF THE SUPREME COURT

# EXHIBIT D



**McANDREW VUOTTO** LLC
ATTORNEYS AT LAW

13 Mt. Kemble Ave., Morristown, NJ 07960

Robert W. McAndrew, Esq.
rwm@mcandrewvuotto.com
Phone: (973) 538-6308
Fax: (973) 538-2103

Reply to: Morristown

August 27, 2020

Hon. William H. Pauley, III
United States District Judge
Southern District of new York

**Re:   Albert O. Grant, II**

Dear Judge Pauley:

    I have known Albert Grant since December of 2017 when he became a client of mine in connection with an ethics complaint filed against him. That matter is still pending. I can tell you that Albert is clearly aware that he has made serious mistakes and that his actions were wrong in regard to the circumstances that have brought him before Your Honor. I do believe based upon working closely with Albert that he is truly remorseful for what he has done and willing to make amends. I do not doubt his sincerity in that regard.

    Albert has a heretofore unblemished record as an attorney in New Jersey. He has expressed to me his sincere regret for his actions that have caused his recent criminal and ethical problems – not because he got into legal trouble, but because he has harmed others.

    I do not know what the future holds for Albert with regard to the practice of law. That path may be foreclosed for a significant period of time. However, I do know that he has learned from these episodes and is genuinely contrite.

Respectfully submitted,

*s/Robert W. McAndrew*

Robert W. McAndrew

RWM:hs